UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL VASQUEZ, )
)
    PETITIONER, )
)
  vs. ) Case No.: 1:14-cv-09019
)
) Hon. Marvin E. Aspen
DONALD ENLOE, )
)
    RESPONDENT. )

### MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is a pro se motion pursuant to 28 U.S.C. § 2254 to vacate, set aside, or correct the conviction rendered against Daniel Vasquez ("Petitioner"), and the sentence rendered against him in the Circuit Court of Cook County, Illinois, on July 23, 2009. Order, *People v. Vasquez*, No. 1-09-2762, 2011 WL 9918793 (Ill. App. Ct. Dec. 7, 2011), State Ex. A. For the reasons stated below, we deny Vasquez's petition.

### BACKGROUND AND PROCEDURAL HISTORY

We begin with a review of the factual background of Petitioner's conviction for drug offenses and the procedural history of his appeal.

**I.    Vasquez's Trial and Conviction**

During Vasquez's jury trial, the trial judge engaged in an ex parte communication with the prosecutor. (Pet. at 5.) During the cross-examination of DEA Agent Terrence Glynn ("Glynn"), defense counsel asked Glynn several questions about the substance of his interview notes with Petitioner. (*Id.* at V-55–62.) Glynn did not remember the substance of his notes because they were in his office at the time. (*Id.*) The court took a break for lunch, and the trial

judge "instructed the State to have Agent Glynn go to his office and retrieve the notes of the interview with the defendant which he testified that he had during [] the cross-examination." (Trial Tr. vol. 5, W-3, July 22, 2009.)  After lunch, defense counsel received a copy of the notes and objected to the trial judge discussing this matter outside of his presence.  (*Id.* at W-3–W-7.)  The judge sustained the objection and did not permit the State to question Glynn about the substance of the notes or to enter them into evidence.  (*Id.* at W-7.)

The State then presented evidence that four Chicago police officers and one K-9-unit dog witnessed Vasquez in the possession of cocaine or engaging in the sale of cocaine.  Order, *Vasquez*, 2011 WL 9918793, at *2.  After the State presented its case, Vasquez provided no witnesses on his behalf.  *Id.* at *3.  The jury found the Petitioner guilty of delivery of a controlled substance and possession with intent to deliver, and the judge sentenced him to twenty-five years' imprisonment.  Order, *Vasquez*, 2011 WL 9918793, at *1, *3.

## II. Direct Appeal

Petitioner filed an appeal to the Illinois Appellate Court, which raised one claim: Petitioner's rights to due process and representation by counsel were violated when the trial judge engaged in an ex parte communication with the prosecutor. (Pet. at 2.)  On July 1, 2011, the Illinois Appellate Court affirmed Petitioner's conviction.  (*Id.*)

Petitioner then filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, which raised the same single claim.  (*Id.*)  On May 30, 2012, the Illinois Supreme Court denied Petitioner's request for an appeal.  (*Id.*)  *People v. Vasquez*, 968 N.E.2d 1072, 1072 (Ill. 2012).  Petitioner did not file a writ of certiorari with the United States Supreme Court.  (Pet. at 2.)

### III. State Post-Conviction Proceedings

Petitioner next filed a post-conviction petition in the Circuit Court of Cook County, raising six claims: (1) ineffective assistance of counsel; (2) trial court error in denying Petitioner's motion to suppress; (3) violation of Petitioner's right to speak to the Mexican Consulate; (4) violation of the "one act, one crime" doctrine; (5) denial of Petitioner's right to test the controlled substance at issue; and (6) failure to find Petitioner guilty beyond a reasonable doubt. (Pet. at 3.) On August 17, 2012, the Circuit Court denied the post-conviction petition. (*Id.*) Petitioner appealed the ruling on his petition, and on June 11, 2014, the Illinois Appellate Court affirmed the ruling. (PLA at 1, State Ex. J.) On September 24, 2014, the Illinois Supreme Court denied Petitioner's request for an appeal. (Pet. at 3.)

### IV. Federal Habeas Petition

Next, on November 7, 2014, Petitioner filed a federal habeas petition, this time asserting only two claims: (1) Petitioner's rights to due process and representation by counsel were violated when the trial judge engaged in an ex parte communication with the prosecutor; and (2) Petitioner's rights to due process and equal protection of the laws were violated when Petitioner received a much greater sentence than his co-defendants. (Pet. at 5.)

## ANALYSIS

We start our analysis by addressing whether Petitioner has exhausted his options in state court and permitted each level of state court to rule on the issues before us. After finding that Petitioner is in procedural default as to his sentencing disparity claim but not on his ex parte communication claim, we turn to the merits of the latter.

**I.     Procedural Default**

For us to review a claim for a writ of habeas corpus on the merits, the petitioner must exhaust state court remedies and avoid procedural default. 28 U.S.C. § 2254(b)(1); *Rosario v. Akpore*, 967 F. Supp. 2d 1238, 1246 (N.D. Ill. 2013) (citing *Perruquet v. Briley*, 390 F.3d 505, 513–15 (7th Cir. 2004)). To avoid procedural default, the petitioner must fairly present all of the claims included in his federal habeas petition in one complete round of the state court's appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."); *see also United States ex rel. Ojeda v. Harrington*, 11 C 5779, 2014 WL 2581320, at *7 (N.D. Ill. June 9, 2014). In addition, for a federal court to reach the merits of a habeas claim, the state court's judgment against the petitioner must not clearly rely on adequate and independent state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991); *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014).

    **a. Ex Parte Communication (Claim 1)**

Petitioner raised his ex parte communication claim in his direct appeal and his PLA. His direct appeal and his PLA constitute one complete round of the state court's appellate review. *See O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732; *Lewis*, 390 F.3d at 1026. Therefore, Claim 1 is not procedurally defaulted.

    **b. Sentencing Disparity (Claim 2)**

Petitioner did not raise his sentencing disparity claim in his direct appeal to the Illinois Appellate Court, his PLA, or his post-conviction petition. (Pet. at 2–3.) No state court has ruled on this claim, so it is procedurally defaulted. By appealing his conviction to the Illinois

Appellate Court and submitting a PLA, Petitioner exhausted the available state court remedies without raising this claim. He cannot return to state court to argue it now. *Perruquet*, 390 F.3d at 514; *see Engle v. Isaac*, 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 1571 (1982). Since Petitioner did not raise any exceptions to procedural default in his petition, we will not consider them. *See, e.g.*, *Perruquet*, 390 F.3d at 514. As a result, Claim 2 is procedurally defaulted and we will not assess its merits.

## II. Merits of Ex Parte Communication Claim

Since Claim 1 is not procedurally defaulted, we next analyze the merits of that claim. Pursuant to 28 U.S.C. § 2254, a court may issue a writ of habeas corpus after a state court judgment only where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To succeed on a habeas claim, a petitioner must show that the state court's judgment: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 1519 (2000); *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011).

A state court's decision is "contrary" to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519; *see also Morgan*, 662 F.3d at 797; *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005). To be an "unreasonable application," a state court's application of federal law must be

more than incorrect or erroneous; it must be "objectively" unreasonable. *Williams*, 529 U.S. at 410, 120 S. Ct. at 1522 (finding that "a federal habeas court may not issue the writ simply because that court concludes . . . that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *see also Morgan*, 662 F.3d at 797. For a state court judgment to be unreasonable under this standard, it must lay "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *accord Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004).

Petitioner argues that an improper ex parte communication between the trial judge and the prosecutor tainted the trial and denied him his constitutional rights. During Petitioner's trial, defense counsel asked DEA Agent Terrence Glynn about the notes from his interview with Petitioner, but Glynn stated he did not recall the substance of the notes. (Trial Tr. vol. 5, V-55–62, July 22, 2009.) The court then took a lunch break, during which the trial judge "instructed the State to have Agent Glynn go to his office and retrieve the notes of the interview with the defendant which he testified that he had during [] the cross-examination." (*Id.* at W-3.) On appeal, the Illinois Appellate Court found that this ex parte communication was harmless error. Order, *Vasquez*, 2011 WL 9918793, at *1. As discussed below, we find that the Illinois Appellate Court decision was not an "unreasonable application" of Supreme Court precedent, nor does it rest upon an unreasonable determination of the facts. *Williams*, 529 U.S. at 409.

Petitioner asserts a two-part argument that the ex parte communication violated his constitutional rights. First, the trial judge violated his right to counsel by engaging in an ex parte communication, and second, that the judge violated his right to due process by telling the State how to proceed with its case. (Pet. at 5A.) We address each in turn.

6

### a.       Right to Counsel

In *Strickland v. Washington*, the Supreme Court held that to establish an ineffective assistance of counsel claim, the defendant typically must show that the denial of counsel prejudiced him. 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). If counsel is excluded from a critical stage of trial, however, the court may presume that the defendant's right to counsel was violated; no showing of prejudice is necessary. *Woods*, 135 S. Ct. at 1376 (citing *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047 (1984)); *see also Bell v. Cone*, 535 U.S. 685, 696, 122 S. Ct. 1843, 1851 (2002). A critical stage is one with "significant consequences for the accused." *Woods*, 135 S. Ct. at 1376 (citing *Bell*, 535 U.S. at 696, 122 S. Ct. at 1851).

The Illinois Appellate Court found that the ex parte communication was harmless because it did not cause prejudice. Order, *Vasquez*, 2011 WL 9918793, at *4–5. Under the *Strickland* framework, we find the court was reasonable in concluding that no prejudice occurred. 466 U.S. at 694, 104 S. Ct. at 2068. After the ex parte communication, the trial judge informed defense counsel of the substance of the communication and permitted him to object to the State using Glynn's notes as evidence. Order, *Vasquez*, 2011 WL 9918793, at *2. The trial judge sustained defense counsel's objection, and the judge did not permit the State to use the substance of the notes or question Glynn about them. *Id.* As the Illinois Appellate Court presumed, defense counsel would likely "have advanced the same arguments and achieved the same result" had he been present for the communication between the trial judge and the State. *Id.* at *4. Under these circumstances, it was reasonable for the Illinois Appellate Court to determine that the ex parte communication did not prejudice the Petitioner.

As we explained, however, even absent prejudice a defendant's right to counsel might still be violated if he was denied counsel at a critical stage of the criminal proceedings. *See Woods*, 135 S. Ct. at 1376. Although the Illinois Appellate Court did not specifically address whether the communication occurred during a critical stage, it did note that the communication took place outside the presence of the jury and during a break from trial. Order, *Vasquez*, 2011 WL 9918793, at *4. The Supreme Court has never indicated that an ex parte communication between the State and the trial judge outside the presence of the jury is a critical stage. *See Hereford v. Warren*, 536 F.3d 523, 529 (6th Cir. 2008) ("The Supreme Court . . . has never indicated that an improper ex parte conference between the judge and prosecutor during trial amounts to *Cronic* error."); *Ray v. Perry*, 11 C 11100, 2014 WL 3555968, at *23 (E.D. Mich. July 9, 2014) (acknowledging the same). Thus, the Appellate Court's finding that the ex parte communication did not deprive Petitioner of his right to counsel was not "contrary to, or involved an unreasonable application of" Supreme Court precedent.[1] *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519; *see Patterson v. California*, 12 C 2475, 2014 WL 840281, at *13 (E.D. Cal. Mar. 4, 2014) (finding ex parte communication between judge and prosecutor was not contrary to clearly established federal law); *Ray*, 2014 WL 3555968, at *23. Since we find the Appellate Court's decision was reasonable and not contrary to clearly established Federal law, we deny Petitioner's habeas petition on his right to counsel claim.

---

[1] Nor do we believe that, if this issue was presented to the Supreme Court, the Court would find that the ex parte communication in question had "significant consequences" for Petitioner. *Woods*, 135 S. Ct. at 1376. As we discussed, the communication occurred over a lunch break outside the presence of the jury. The judge simply asked the State to retrieve a witness's interview notes. Petitioner's counsel had the opportunity to object to the use of those notes, and the judge sustained his objection.

**b.     Due Process**

Petitioner next argues that the trial judge denied his Fourteenth Amendment right to due process when the judge told the prosecutor how to proceed with this case by instructing him to retrieve the witness's interview notes. Although the Illinois Appellate Court did not specifically refer to this aspect of Petitioner's argument, it is reasonable to infer that the court impliedly rejected it in holding that the ex parte communication was harmless. We find this conclusion is neither unreasonable nor contrary to clearly established federal law.

The trial judge has "broad discretion in conducting trials" and may direct the course of a trial in his courtroom, so long as he remains impartial. *United States v. Barnhart*, 599 F.3d 737, 743 (7th Cir. 2010); *United States v. Webb*, 83 F.3d 913, 917 (7th Cir. 1996). Under the Federal Rules of Evidence, the trial judge may ask questions or call witnesses without crossing the line into advocacy. 1 McCormick on Evid. title 2, ch. 2, § 8 (7th ed. 2013); Fed. R. Evid. 614; *see also United States v. Martin*, 189 F.3d 547, 553 (7th Cir. 1999) ("[I]ntelligent questioning by the trial judge is his prerogative."). This discretion assists the judge in carrying out his affirmative duty to avoid confusion for the jury. *Martin*, 189 F.3d at 553; *see also People v. Falaster*, 173 Ill. 2d 220, 231–32, 670 N.E.2d 624, 630 (Ill. 1996).

In *United States v. Washington*, the Seventh Circuit held that allegations of judicial bias require a two-part test: first, whether the judge "conveyed a bias regarding the defendant's honesty or guilt," and second, "whether the complaining party has shown serious prejudice resulting from the [] court's comments or questions." 417 F.3d 780 (7th Cir. 2005) (citing *Martin*, 189 F.3d at 553). In that case, the trial court interrupted the testimony of three witnesses to ask them questions. *Washington*, 417 F.3d at 783. The defendant contended that the court's questions showed bias and prejudiced the jury, but the Seventh Circuit held that the trial court

9

"was simply trying to get the facts out for the jury," which is an appropriate role of the trial judge. *Id.* at 785.

Regarding the first prong of the *Washington* test, we find it reasonable to conclude that the trial judge's intervention in this case did not convey a bias regarding "honesty or guilt." *Washington*, 417 F.3d at 780. The trial judge asked the State to have Glynn retrieve his notes to refresh his memory and make better use of the jury's time. *See* Order, *Vasquez*, 2011 WL 9918793, at *2. This ex parte communication occurred outside the presence of the jury, thus the judge expressed no bias to the jury during the communication itself. *Id.* Moreover, his instruction was similar to a judge asking questions to clarify a witness' testimony: the judge was simply fulfilling his duty to avoid confusion for the jury, rather than conveying a bias. *See Martin*, 189 F.3d at 553.

Moving to the second prong, we also find it reasonable to conclude that the judge's instruction did not cause Petitioner "serious prejudice." *Washington*, 417 F.3d at 780. First, the trial judge did not permit the State to ask Glynn about the substance of the notes or enter them into evidence, so the notes themselves did not prejudice Petitioner. Order, *Vasquez*, 2011 WL 9918793, at *2. In addition, the Petitioner contends that the ex parte communication caused prejudice by interrupting Glynn's testimony and permitting the State to rehabilitate Glynn's credibility. (Pet. at 5A.) But the communication occurred over a lunch break, so it was the lunch break, not the communication, that interrupted Glynn's testimony. (Trial Tr. vol. 5, W-12–13, July 22, 2009); Order, *Vasquez*, 2011 WL 9918793, at *2. Since the State did not use the notes during Glynn's testimony and the lunch break would have interrupted the testimony even absent the ex parte communication, the Appellate Court's conclusion that the communication did not

prejudice Petitioner was reasonable. Accordingly, we deny Petitioner's habeas petition on his due process claim as well.

## CERTIFICATE OF APPEALABILITY

In the event that Petitioner intends to appeal this decision, we decline to issue a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c)(1), a COA is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c). We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Walker v. O'Brien*, 216 F.3d 626, 631–32 (7th Cir. 2000). To show that his constitutional rights have been denied, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3395 (1983)). For claims that the district court dismissed on procedural grounds, it should issue a COA only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Here, reasonable jurists could not debate our conclusion with respect to Petitioner's claims. As addressed above, precedent dictates the outcome of Petitioner's first claim: the ex parte communication is only erroneous if it prejudiced the defendant or occurred during a critical stage of the proceedings. *See Woods*, 135 S. Ct. at 1376; *Cronic*, 466 U.S. at 659, 104 S. Ct. at 2047. The ex parte communication did not prejudice Petitioner because the trial judge

11

permitted his lawyer to object to the use of the witness's notes and excluded them from evidence. Order, *Vasquez*, 2011 WL 9918793, at *2. In addition, the judge did not bias the jury or prejudice the Petitioner by asking the witness to retrieve his interview notes; this request did not cross the line into advocacy and instead merely prevented confusion of the jury. *See* Fed. R. Evid. 614; *Martin*, 189 F.3d at 553. For these reasons, Petitioner has not made a substantial showing of the denial of a constitutional right. *See Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Similarly, no reasonable jurist could disagree with our conclusion that Petitioner's second claim is procedurally defaulted. Petitioner did not properly present his second claim to the Illinois court. Moreover, we have no basis to excuse his default. To reach the merits of this defaulted claim would undermine the procedural protections in place for ensuring a federal court's deference to state court proceedings. *Murray v. Carrier*, 477 U.S. 478, 489, 106 S. Ct. 2639, 2646 (1986).

## CONCLUSION

For the foregoing reasons, we deny Vasquez's petition for writ of habeas corpus. We also decline to issue a certificate of appealability. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: September 4, 2015
  Chicago, Illinois